UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| GOLSHAN D., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:21-cv-00450 <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Golshan D.[1] brought this action against Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434.[2] The Administrative Law Judge ("ALJ") determined Ms. D. did not qualify as disabled.[3]

Ms. D. argues the ALJ failed to properly consider the opinions of her treating physician[4] and improperly applied the medical-vocational guidelines.[5] However, Ms. D. relies on old regulations in support of both claims, and the record shows the ALJ properly applied the correct

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 4.)

[3] (Certified Tr. of Admin. R. ("Tr.") 17–27, Doc. Nos. 12–13.)

[4] (Opening Br. 9–10, Doc. No. 23.)

[5] (*Id.* at 10–11.)

1

standards. Accordingly, after careful review of the entire record and the parties' briefs,[6] the undersigned[7] recommends the chief district judge affirm the Commissioner's decision.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner of the Social Security Administration. This court reviews the ALJ's decision to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[8] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[9]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[10] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings

---

[6] This recommendation is based on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[7] On November 23, 2021, Chief Judge Robert J. Shelby referred this case to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 9.)

[8] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

from being supported by substantial evidence."[13] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[14]

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[15] An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[16]

In making a disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) The claimant is engaged in substantial gainful activity;
2) The claimant has a severe, medically determinable physical or mental impairment;
3) The impairment is equivalent to an impairment listed in the appendix of the relevant disability regulation, which precludes substantial gainful activity;
4) The claimant has a residual functional capacity to perform past, relevant work; and

---

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 423(d)(1)(A).

[16] *Id.* § 423(d)(2)(A).

3

    5) The claimant has a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.[17]

The claimant has the burden of establishing disability in the first four steps.[18] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.[19]

## PROCEDURAL HISTORY

Ms. D. applied for Title II disability insurance benefits on April 30, 2018, alleging disability beginning on January 21, 2018.[20] Ms. D. was forty-five years old on the alleged disability onset date.[21] After a hearing in November 2020,[22] the ALJ issued a decision on February 3, 2021, finding Ms. D. was not disabled.[23]

At step two of the sequential evaluation, the ALJ found Ms. D. had the severe impairments of "systemic lupus erythematosus [and] chronic idiopathic thrombocytopenic purpura (ITP), relapsing."[24] The ALJ found Ms. D. also had nonsevere impairments of obesity, anemia, hysterectomy, and carpal tunnel syndrome, which the ALJ considered in assessing her

---

[17] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[18] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *Id.*

[20] (Tr. 17, 252–60.)

[21] (*See id.* at 25.)

[22] (*See id.* at 77–108.)

[23] (*Id.* at 17–27.)

[24] (*Id.* at 20.)

residual functional capacity.[25] At step three, the ALJ found Ms. D.'s impairments did not meet or equal the severity of an impairment listing.[26] At step four, the ALJ determined Ms. D. had the residual functional capacity (RFC) to perform "sedentary work" with the following exceptions:

> [S]he can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can sit for about 6 hours in an 8-hour workday, and stand and/or walk combined for about 2 hours in an 8-hour workday. She should never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently, but not constantly, handle, finger and feel bilaterally. She should have no exposure to work around hazards, such as unprotected heights and fast and dangerous moving machinery. Mentally, the claimant can understand, remember and carry out simple tasks and maintain concentration, persistence and pace for 2 hour work segments.[27]

Based on this RFC, the ALJ found Ms. D. unable to perform any past relevant work.[28] At step five, the ALJ found that, considering Ms. D.'s age, education, work experience, and RFC, she was capable of performing other jobs existing in significant numbers in the national economy.[29] Therefore, the ALJ found she was not disabled.[30]

The Appeals Council denied Ms. D.'s request for review,[31] making the ALJ's decision final for purposes of judicial review.

---

[25] (*Id.*)

[26] (*Id.* at 20–21.)

[27] (*Id.* at 21.)

[28] (*Id.* at 25.)

[29] (*Id.* at 26–27.)

[30] (*Id.* at 27.)

[31] (*Id.* at 1–6.)

DISCUSSION

Ms. D. raises two claims of error. First, she argues the ALJ failed to properly consider the opinions of her treating physician, Dr. Stoneburner.[32] Second, she argues the ALJ improperly applied the Social Security Administration's medical-vocational guidelines at step five of the sequential evaluation.[33] Both arguments fail where Ms. D. relies on old regulations in support of her claims, and the ALJ properly applied governing standards.

**A. Dr. Stoneburner's Opinions**

Ms. D. argues the ALJ erred by failing to give proper weight to Dr. Stoneburner's opinions.[34] Because Dr. Stoneburner was her treating physician, Ms. D. contends the ALJ was required to give his opinions controlling weight, or at least some weight.[35]

Ms. D.'s argument is premised on a misunderstanding of the applicable law. For claims filed before March 27, 2017, Social Security Administration regulations required a treating physician's medical opinion to be given "controlling weight" if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [the] case record."[36] However, the Social Security Administration has implemented new regulations for evaluating medical opinion evidence for

---

[32] (Opening Br. 9–10, Doc. No. 23.)

[33] (*Id.* at 10–11.)

[34] (*Id.* at 9–10.)

[35] (*Id.*)

[36] 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

cases filed on or after March 27, 2017, like Ms. D.'s.[37] Under the new regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."[38] Instead, the ALJ assesses the persuasiveness of the opinions based on: (1) supportability (the extent to which the opinion is supported by underlying medical evidence and explanations), (2) the consistency of the opinion with other medical and non-medical sources, (3) the relationship with the claimant (including the length, frequency, purpose and extent of the relationship, and whether it was an examining relationship), (4) any specialization, and (5) any other relevant factors.[39] The most important factors are supportability and consistency—the ALJ is required to explain how she evaluated those two factors.[40]

Because Ms. D.'s claim was filed after March 27, 2017, the new regulations apply. Accordingly, the ALJ was not required to assign particular weight based on Dr. Stoneburner's status as a treating physician. Even after the Commissioner pointed out the correct legal standards in her answer brief, Ms. D. failed to file a reply or raise any other argument challenging the ALJ's consideration of Dr. Stoneburner's opinions. Therefore, Ms. D. fails to demonstrate any error in the ALJ's evaluation of Dr. Stoneburner's opinions.

---

[37] *See Revisions to Rules Regarding the Evaluation of Med. Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132 (Mar. 27, 2017)); 20 C.F.R. § 404.1520c.

[38] 20 C.F.R. § 404.1520c(a).

[39] *Id.* at § 404.1520c(c)(1)–(5).

[40] *Id.* at § 404.1520c(b)(2). In most cases, an ALJ is not required to articulate how she considered the remaining factors. She must do so only where she finds two different medical opinions regarding the same issue are consistent with the record and equally well-supported. *Id.* at § 404.1520c(b)(2)–(3).

7

Indeed, the record shows the ALJ properly applied the new regulations in evaluating Dr. Stoneburner's opinions, including explaining how she evaluated the supportability and consistency factors.[41] The ALJ considered Dr. Stoneburner's opinions that Ms. D.'s lupus affected her brain, memory, and ability to learn new information and skills[42]; that Ms. D. had physical limitations which would preclude even sedentary work[43]; and that Ms. D. had "extreme" limitations in almost all work-related mental activities.[44] The ALJ found Dr. Stoneburner's opinions regarding Ms. D.'s limitations unpersuasive because they appeared to be based largely on Ms. D.'s subjective complaints and were not supported by objective findings or observations on the opinion forms or associated treatment notes.[45] The ALJ also found Dr. Stoneburner's opinions inconsistent with Ms. D.'s work history, "relatively conservative course of treatment," and the fact that Ms. D. was able to be home alone for most days while her husband was at work.[46] The ALJ cited record evidence to support these findings, including the opinion forms completed by Dr. Stoneburner, Dr. Stoneburner's treatment notes, and the consultative examiner's findings regarding Ms. D.'s daily activities.[47] The evidence cited by the ALJ is more than a mere scintilla and constitutes substantial evidence supporting the ALJ's assessment.

---

[41] (Tr. 24–25.)

[42] (*Id.* at 24, 513–18.)

[43] (*Id.* at 24–25, 547–51.)

[44] (*Id.* at 25, 552–56.)

[45] (*Id.* at 24–25.)

[46] (*Id.*)

[47] (*Id.* (citing *id.* at 510, 513–18, 547–56, 960–63, 1021).)

8

Because the ALJ applied the correct legal standards and substantial evidence supports her findings, the ALJ did not err in her evaluation of Dr. Stoneburner's opinions.

### B. Medical-Vocational Guidelines

Ms. D. next argues the ALJ failed to properly apply the Social Security Administration's medical-vocational guidelines at step five of the sequential evaluation.[48] Ms. D. contends these guidelines directed a finding of "disabled" given Ms. D.'s age, work experience, residual functional capacity, and inability to communicate in English.[49] She also contends the ALJ erred in finding transferability of job skills was immaterial.[50]

The medical-vocational guidelines, commonly called the "grids," mandate a finding of "disabled" or "not disabled" at step five if a claimant's RFC and vocational factors (age, education, and work experience) are the same as a grid rule.[51] If, however, a claimant's RFC and vocational factors are not the same as a grid rule, the grids do not mandate a finding of "disabled" or "not disabled," and the grids are merely used as a framework for decisionmaking.[52] In these circumstances, the ALJ may call a vocational expert to testify about whether a

---

[48] (Opening Br. 10–11, Doc. No. 23.)

[49] (*Id.* at 11.)

[50] (*Id.* at 10.)

[51] 20 C.F.R. § 404.1569; *see also Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) ("When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids.").

[52] *See* 20 C.F.R. § 404.1569 ("[W]e do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule."); Social Security Ruling ("SSR") 83-11, 1983 SSR LEXIS 31, at *2 ("Where the criteria of any rule are not met, a decision is not directed . . . . In these cases, the rules are used, in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decisionmaking.").

9

hypothetical person with the claimant's RFC and vocational factors is capable of performing work existing in significant numbers in the national economy.[53]

Here, the ALJ found Ms. D. was forty-five years old on the alleged disability onset date, had a marginal education, and had unskilled work experience.[54] The ALJ noted that, given these vocational factors, rule 201.18 of the medical-vocational guidelines would direct a finding of "not disabled" if Ms. D. had the RFC to perform the full range of sedentary work.[55] However, the ALJ found Ms. D.'s "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations."[56] Therefore, the ALJ used this rule as a framework and called a vocational expert to testify regarding "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."[57] The vocational expert testified that, given all these factors, the individual could perform jobs existing in significant numbers such as electrical equipment assembler, document preparer, and surveillance system monitor.[58] Based on this testimony, the ALJ concluded "[a] finding of 'not disabled' is therefore appropriate under the framework of [rule 201.18]."[59]

---

[53] *See* 20 C.F.R. § 404.1566(e); SSR 96-9p, 1996 SSR LEXIS 6, at *26–27.

[54] (Tr. 25–26.)

[55] (*Id.* at 26); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.18, https://www.ssa.gov/OP_Home/cfr20/404/404-app-p02.htm.

[56] (Tr. 26.)

[57] (*Id.*)

[58] (*Id.* at 26–27.)

[59] (*Id.* at 27.)

Ms. D. argues the medical-vocational guidelines directed a finding of "disabled" because she is unable to communicate in English.[60] Ms. D. quotes a prior version of the sedentary work guidelines—section 201.00(h)(1)—which stated that a finding of "disabled" was warranted for individuals age forty-five to forty-nine who are restricted to sedentary work, are unskilled or have no transferrable skills, have no past relevant work or can no longer perform past relevant work, and are unable to communicate in English, or are able to speak and understand English but unable to read or write English.[61]

Ms. D.'s argument is, again, premised on outdated legal standards. As the Commissioner points out in her answer brief,[62] the medical-vocational guidelines have been revised to eliminate the educational category "inability to communicate in English."[63] Under the revised guidelines, the agency "no longer consider[s] whether an individual is able to communicate in English at the fifth and final step of the sequential evaluation process."[64] Thus, the revised version of the section cited by Ms. D. no longer refers to inability to communicate in English but, instead, refers to individuals who are "illiterate."[65] The revised guidelines apply to all cases decided on

---

[60] (Opening Br. 7–8, 11, Doc. No. 23.)

[61] (*See id.* at 11.)

[62] (*See* Answer Br. 17–18, Doc. No. 24.)

[63] 85 Fed. Reg. 10586.

[64] *Id.* at *10587.

[65] *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.00(h)(1) ("[A] finding of 'disabled' is warranted for individuals age 45-49 who: (i) [a]re restricted to sedentary work, (ii) [a]re unskilled or have no transferable skills, (iii) [h]ave no past relevant work or can no longer perform past relevant work, and (iv) [a]re illiterate."); *see also id.*, Rule 201.17 (directing a finding of "disabled" for individuals age 45–49 who are restricted to sedentary work, have unskilled or no work experience, and are illiterate).

or after their effective date of April 27, 2020[66]—including this case, which was decided on February 3, 2021.[67] The agency also promulgated Social Security Ruling 20-01p, effective the same date, which explains "[w]hen determining the appropriate education category, [the agency] will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency."[68] Further, the agency "will assign an individual to the illiteracy category only if the individual is unable to read or write a simple message in any language."[69]

Under the applicable rules in effect at the time of the ALJ's decision, the ALJ did not err by failing to consider Ms. D.'s inability to communicate in English at step five. The ALJ found Ms. D. had a marginal education but was not illiterate based Ms. D.'s testimony that she could read a Farsi newspaper and could write her name in Farsi, and because she had previously performed unskilled work consistent with a marginal education level.[70] Ms. D. does not challenge these findings or argue she is illiterate in any language. She merely argues the ALJ erred in failing to find her disabled based on her inability to communicate in English.[71] Because the revised guidelines applicable to Ms. D.'s claim eliminate this consideration, Ms. D.'s argument fails as a matter of law.

---

[66] 85 Fed. Reg. 10586, at *10587, 10596.

[67] (*See* Tr. 17–27.)

[68] SSR 20-01p, 2020 SSR LEXIS 2, at *4–5.

[69] *Id.* at *5.

[70] (Tr. 25–26; *see also id.* at 90.)

[71] (*See* Opening Br. 7–8, 11, Doc. No. 23.)

Finally, Ms. D. argues the ALJ erred by finding transferability of job skills immaterial.[72] Specifically, the ALJ found "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Ms. D.] is 'not disabled,' whether or not [Ms. D.] has transferable job skills."[73]

The ALJ's statement is consistent with the medical-vocational guidelines. Social Security Ruling 82-41 explains that, under the medical-vocational guidelines, transferability of skills is only material where a claimant has past relevant work experience which is skilled or semiskilled.[74] Here, the ALJ found Ms. D. had only unskilled work experience[75]—which Ms. D. does not dispute. Therefore, the ALJ properly found transferability of job skills was immaterial. Indeed, consistent with the ALJ's statement, the grid rule applicable to a person capable of performing sedentary work and matching Ms. D.'s vocational factors—rule 201.18—directs a finding of "not disabled," regardless of transferability of work skills.[76] Because Ms. D. was incapable of performing the full range of sedentary work, the ALJ properly used this rule only as a framework; she also relied on testimony from a vocational expert concluding that a person with

---

[72] (*Id.* at 10.)

[73] (Tr. 26.)

[74] SSR 82-41, 1982 SSR LEXIS 34, at *3 ("Transferability of skills is an issue only when an individual's impairment (s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and *that work has been determined to be skilled or semiskilled*. When the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work." (emphasis added)).

[75] (Tr. 25.)

[76] 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.18.

Ms. D.'s RFC and vocational factors was capable of performing work in the national economy.[77] Ms. D. fails to identify any error in this analysis.

For these reasons, the ALJ did not err in her application of the medical-vocational guidelines.

## RECOMMENDATION

The undersigned RECOMMENDS the chief district judge AFFIRM the Commissioner's decision. The court will send copies of this Report and Recommendation to all parties, who are notified of their right to object. Any objection to this Report and Recommendation must be filed within fourteen days of service.[78] Failure to object may constitute waiver of objections upon subsequent review.

DATED this 23rd day of January, 2023.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

---

[77] (Tr. 26–27.)

[78] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).